UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

SHERRY MARCHITTO,
    Plaintiff,

-v-                                            CASE NO. 2:08-CV-148-FTM-DNF

MICHAEL J. ASTRUE,
Commissioner of Social Security,
    Defendant.
_____/

## OPINION AND ORDER[1]

This matter is before the Court on the Plaintiff's complaint (Doc. #1), seeking review of the final decision of the Commissioner of Social Security of the Social Security Administration ("the Commissioner") denying her claim for disability, disability insurance benefits, and Supplemental Security Income (SSI)[2]. The Plaintiff timely pursued and exhausted her administrative remedies making this claim ripe for review under section 216(I) and 223, respectively of the Social Security Act, as amended and disabled under section 1614(a)(3)(A) of the Act. The Commissioner has filed a transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties have filed legal memoranda. For the reasons set forth below, the Court finds that the Commissioner's decision is due to be **REVERSED AND REMANDED**.

---

[1]    Both parties have consented to the exercise of jurisdiction by a magistrate judge, and the case has been referred to the undersigned by an Order of Reference dated June 10, 2008. (Doc.# 17).

[2]    Because the disability definitions for DIB and SSI are identical, cases under one statute are persuasive as to the other. <u>Patterson v. Bowen</u>, 799 F.2d 1455, 1456 (n.1 (11th Cir. 1986); <u>McCruter v. Bowen</u>, 791 F.2d 1544, 1545 n.2 (11TH Cir. 1986).

# I. Social Security Act Eligibility, the ALJ Decision, and Standard of Review

The Plaintiff is entitled to disability benefits when she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423 (d) (1)(A); 1382c(a)(3)(A). The Commissioner has established a five-step sequential evaluation process for determining whether the Plaintiff is disabled and therefore entitled to benefits. *See* 20 C.F.R. § 416.920(a)-(f); *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997). The Plaintiff bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

On March 23, 2004, (Tr. 11), the Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income. In both applications, the Plaintiff alleged disability began on January 28, 2004. The claims were denied initially on August 16, 2004, and upon reconsideration on June 20, 2005. The Plaintiff timely filed a written request for hearing on August 11, 2005. The Plaintiff appeared and testified at a hearing held on August 23, 2007, in Fort Myers, Florida. (Tr. 42-43, 47, 400). The Plaintiff was represented by counsel and an impartial vocational expert also appeared at the hearing. On October 25, 2007, the ALJ issued a partial unfavorable decision[3] finding the Plaintiff disabled as of

---

[3] Based on the application for supplemental security income protectively filed on March 23, 2004, the Plaintiff has been disabled under section 1614(a)(3)(A) of the Social Security Act beginning on May 19, 2007.

May 19, 2007, but not before that date. (Tr. 7). The Appeals Council denied Plaintiff's request for review, making the hearing decision the final decision of the Commissioner. (Tr. 2, 6).

In this case, there is an additional issue as to whether the insured status requirements of sections 216(d) and 223 of the Social Security Act are met. The record shows that the Plaintiff has acquired sufficient quarters of coverage to remain insured through December 31, 2005. Therefore, the Plaintiff must establish disability on or before that date to be entitled to a period of disability and disability insurance benefits.

The Administrative Law Judge Steven D. Slahta concluded that the Plaintiff was not disabled prior to May 19, 2007, but became disabled on that date and has continued to be disabled through the date of the decision, October 25, 2007. The Plaintiff was not under a disability within the meaning of the Social Security Act at any time through December 31, 2005, the date last insured.

At Step 1 the ALJ found the Plaintiff had not engaged in substantial gainful activity since her alleged onset date of January 28, 2004. (Tr. 13). At Step 2 the ALJ found the Plaintiff suffered from severe impairments of: fibromyalgia, cervical disc disease, carpal tunnel syndrome, asthma and adjustment disorder. (Tr. 13). 20 C.F.R. § 404.1520(c) and 416.920(c). At Step 3 the ALJ found these impairments did not meet or equal, either singly or in combination with any other impairments, any of the impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d) and 416.920(d)). (Tr. 15). . At Step 4 the ALJ determined the Plaintiff had the residual functional capacity to perform sedentary work with a sit/stand option. The Plaintiff can occasionally balance, stoop, kneel, crouch,

and crawl. The Plaintiff can perform work requiring gross grasping rather than repetitive fine fingering. The Plaintiff cannot climb or work around hazards. The Plaintiff must work in a clean air environment and is limited to unskilled work in a low stress environment (involving one to two step processes, routine and repetitive tasks). Further the Plaintiff should work primarily with things rather than people and work in an entry level position. (Tr. 16). The ALJ further determined that the Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible. At step 5 the ALJ determined the Plaintiff's past relevant work as a merchandising assistant required the performance of medium exertion and the Plaintiff is limited to no more than sedentary exertion, therefore she is unable to perform her past relevant work.

The Court reviews the Commissioner's decision to determine if it is supported by substantial evidence and based upon proper legal standards. Crawford v. Commissioner of Social Security, 363 F.3d 1155, 1158 (11th Cir. 2004). Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. Crawford, 363 F.3d at 1158. Even if the evidence preponderates against the Commissioner's findings, the Court must affirm if the decision reached is supported by substantial evidence. Crawford, 363 F.3d at 1158-59.

The Court does not decide facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). The magistrate judge, district judge and appellate judges all apply the same legal

standards to the review of the Commissioner's decision. Dyer, 395 F.3d at 1210; Shinn ex rel. Shinn v. Commissioner of Social Security, 391 F.3d 1276, 1282 (11th Cir. 2004); Phillips v. Barnhart, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004).

## II. Review of Facts and Conclusions of Law

**A.     Background Facts:**

The Plaintiff was 49 years at the time the hearing. The Plaintiff completed high school and attended one year of college. [Tr. 443]. The Plaintiff's past employment was as a merchandising assistant. (Tr. 19, 443).

The Plaintiff was treated by Barry J. Sell, M.D., from approximately March 1996 through August 2001. On March 11, 1996, the Plaintiff was treated for epigastric discomfort and lower abdominal discomfort. Dr Sell advised the Plaintiff to take her medication and then clear liquids and "gradually advance the diet". It appears from the record that the Plaintiff was following a diet plan at this time. Dr. Sell's noted stated:. "[I]f she is still symptomatic into next week, we'll need to do a flexible sigmoidoscopy and she will call and let us know". [Tr. 395].

Dr. Sell diagnosed the Plaintiff with anxiety and prescribed Xanax and Paxil and on August 21, 2001, the Plaintiff presented to his office with plantar fascitis of the left foot, having had burning for 5 weeks. The Plaintiff advised she was being treated by Dr. Hon for angina pectoris. It was recommended that she have a cardiac cath but the Plaintiff declined. The Plaintiff advised she was taking Nitrostat for the chest pain. The Plaintiff further advised that she was seeing Dr. King Tipton, a neurosurgeron for low back pain. Dr. Tipton advised her that the pain was a result of her being overweight and recommended she

take an aspirin a day. The Plaintiff was switched from Paxil to Serzone by Dr. Catherine Larned at the Ruth Cooper Center. The Plaintiff advised she was applying for disability. The Plaintiff was advised to call on an as needed basis. [Tr. 386].

The Plaintiff continued to have increased anxiety and was treated from January 2002 through June 2002 by Dr. Nicholas Anthony, Ph.D. [Tr. 331-339]. The Plaintiff was unable to work on January 22, 2002, because of her angina pectoris and increased anxiety. [Tr. 331-335]. She was diagnosed with adjustment disorder with anxiety and assigned a GAF of 55. On April 10, 2002, Dr. Anthony stated the Plaintiff was physically disabled and unable to work due to her anxiety and angina pain. [Tr. 337]. The Plaintiff was admitted to Lee Memorial Hospital in the summer of 2002 for chest pain. She was discharged on August 12, 2002, with a diagnosis of chest pain, non-cardiac etiology, microcytic anemia secondary to heavy menstrual flow and hypertriglyceridemia. [Tr. 408-426].

The Plaintiff began treatment with Dr. Angela Bryan as a new patient on August 15, 2002.. [Tr. 377-383]. The Plaintiff reported anxiety and that she did not feel well most of the time. [Tr. 382-383]. The Plaintiff was having difficulty sleeping due to "restless leg" and excess worry. The Plaintiff advised that she had a cardiac cath for chest pain in '02 that was negative. The Plaintiff's medications were adjusted and modified. Dr. Bryan referred the Plaintiff for an endoscopy and a colonoscopy for her IBS. The Plaintiff returned in two weeks and reported her anxiety was improving on the Prozac and Zyprex.

The Plaintiff returned to Dr. Bryan on March 17, 2003, with chest pain symptoms, peripheral edema, abdominal bloating and shortness of breath. The Plaintiff was prescribed Paxil CR and her prescriptions for Toprol XL and Prozac were refilled. On June 18, 2003,

the Plaintiff reported continued chest pain, with cramping sensations over her left chest wall, tingling and numbness in her hands and feet, multiple arthralgias and pain and achiness. [Tr. 378].

The Plaintiff was seen on July 9, 2003, and Dr. Bryan reported that the Plaintiff has a history of anxiety and knee and back pain which keeps her from working and that she had applied for disability. The Plaintiff related that she was unable to stand for long periods of time or sit for long periods of time. Further, that she has paresthesias of the hand(s) and chronic foot pain that precludes her from driving a car. Dr. Bryan referred the Plaintiff to Dr. Keith for her colonoscopy and gave her a referral to Dr. Aziz for a rheumatology consult. [Tr. 377-378]. The Plaintiff's medications were adjusted and modified.

In July of 2003, the Plaintiff was examined by Dr. Abdul Aziz at Southwest Florida Rehab & Pain Management Associates. [Tr. 400-406]. The Plaintiff described her history of angina pectoris, her upper and lower back pain, the morning stiffness, achiness and swelling of her joints in her hands and wrists. The Plaintiff advised she had poor sleep, abdominal bloating and irritable bowel syndrome (IBS). Upon examination, the Plaintiff had limited range of motion of her shoulder joints and was tender on palpation of the PIP joints bilaterally especially on the right hand. The Plaintiff had crepitus of her knee joints and fibromyalgia-wise she had 12/18 tender points. On July 21, 2003, the Plaintiff had 14/18 tender points and x-rays showed small calcaneal spurs in her feet and she was diagnosed with osteoarthritis and probable fibromyalgia. The Plaintiff was prescribed Flexeril and Tylenol with codeine. [Tr. 400-401].

On September 17, 2003, the Plaintiff reported increased stiffness in her hands and

feet and felt more fatigued. The Plaintiff had limited range of motion in her shoulder joints and now had 16/18 tender points. The Plaintiff was diagnosed with diverticulitis, polyarthritis, fibromyalgia and osteoarthritis of her feet. Blood work revealed anemia and positive ANA. [Tr. 389-399].

October 15, 2003, the Plaintiff again reported stiffness in her hands, wrists and chest wall pain. Blood work revealed what appeared to be inflammatory polyarthritis. The Plaintiff was stated on Plaquenil and advised to continue her medications.

On January 15, 2004, the Plaintiff increased her dose of Advair to five to six times per day for her increased asthma. The Plaintiff had coarse and decreased breath sounds. The Plaintiff was placed on a Medrol dosepak, Tequin, Albuterol and Advair. During this time period the Plaintiff was treated for her asthma by Dr. Scott Wiley. The Plaintiff's lungs had scattered rales and expiratory wheeze. [Tr. 375]. The Plaintiff was diagnosed with asthma exacerbation and bronchitis and placed on Zithromax and Prednisone and advised to continue her Albuterol and Advair. [Tr. 354-355].

On May 26, 2004, the Plaintiff was reexamined by Dr. Aziz. The Plaintiff continued to report stiffness and pain in her joints, her hands, elbows, low back, knees and feet. [Tr. 354-355].

On August 3, 2004, Dr. Paul Miske, psychologist, performed a psychodiagnostic evaluation at the request of the state disability agency. Dr. Miske found the Plaintiff's attention span was mildly impaired, her mood anxious, with mild impairments with concentration and short-term recall. The Plaintiff stated she was socially isolated. Dr. Miske diagnosed major depressive disorder. [Tr. 328-330].

On April 5, 2005, Dr. Patrick A Ijewere examined the Plaintiff at the request of the state disability agency. The Plaintiff advised of her daily abdominal pain, IBS, migraines, asthma, angina, lupus and joint pain. Dr. Ijewere found the Plaintiff to have moderate pain discomfort, depressed mood with tearful affect and moderately anxious. The Plaintiff had severe bilateral shoulder tenderness and moderate bilateral wrist tenderness with Tinel's sign. Dr. Ijewere noted the Plaintiff had significant difficulty getting in and out of the armless chair and getting off of the exam table. The Plaintiff was not able to lay in a supine position and had moderate antalgic gait. He found she had a motor deficit in her right and left upper extremity of 4/5. The Plaintiff was advised to see a GI doctor and a cardiologist for her angina. Dr. Ijewere opined that the Plaintiff had diffuse joint pain from lupus, severe range of motion limitations (that affected her daily function and activity of daily living) and indicated that seated tasks might only be tolerated for a few hours with limited use of the upper extremities. The Plaintiff was positive for carpal tunnel syndrome and needed pulmonary function testing because of the severe obstructive and restrictive findings that would add to her poor activity tolerance. He indicated physical therapy might help with the Plaintiff's range of motion but overall this would be a major challenge in order to function. The Plaintiff had decreased range of motion in her cervical, lumbar, shoulders, wrists, hands and knees. [Tr. 292-298].

The ALJ determined that Dr. Ijewere was a one-time examiner and his opinion was not entitled to any special deference. In addition, the ALJ determined that Dr. Ijewere's opinion is not supported by the medical findings and is inconsistent with the record as a whole. [Tr. 19].

In May of 2005, the Plaintiff was seen by Thomas Renny, M.D., a state agency medical consultant. Dr. Renny found the Plaintiff morbidly obese and that "[s]he alleges somatic functional disorder but not fibromyalgia, angina like pain, with one positive lab test for SLE, diverticulitis with IBS, asthma, migraine, restless leg syndrome, GERD and hypercholesterol." Dr. Renny found that the ES test reports a functional somatic disorder and demonstrates that this claimant can perform functions that she states that she cannot perform especially in completely closing her fist. Dr. Renny concluded that the Plaintiff could perform medium work.

The Plaintiff was seen by Angela Bryan, M.D. on September 6, 2005, for a mass on her neck and numbness and tingling in her arms. Dr. Bryan's findings were unremarkable. The Plaintiff was advised to return when her insurance was in effect. "[I]f neck swelling still present, will order soft tissue CT of neck. Will also order x-rays of C-spine, T-spine." The Plaintiff returned on October 5, and 17th, 2005, respectively. The Plaintiff complained of back pain but Dr. Bryan's findings remained the same. The Plaintiff was to have an x-ray exam of the cervical spine and thoracic spine. The Plaintiff was to schedule an appointment. with Dr. Hon and to reschedule a sleep study test that was previously ordered by Dr. Eisenberg. [Tr. 268, 269, 27-275].

The Plaintiff was involved in an auto accident on or about November 28, 2005. The Plaintiff was hit from behind and complained of neck, left shoulder and chest pain. The Plaintiff was wearing her seatbelt and the air bag did not deploy. DIAGNOSIS: "[L]eft

trapezius contusion, cervical strain and atypical chest pain". The Plaintiff was given nitroglycerin for relief of her chest pain. The Plaintiff was advised to follow-up for chest pain if it increased or she had any nausea, vomiting or diaphoresis. [Doc. 225].

The Plaintiff was seen by Dr. John Kagan on December 6, 2005, for evaluation of the left shoulder pain and sternal pain. She advised of neck pain and low back pain with bilateral buttock and leg pain. IMPRESSION: "[L]eft shoulder impingement, sternal fracture, cervicothoracic and lumbar spine injuries being followed by Dr. Suddereth." The Plaintiff was injected in the left shoulder with 1 cc. of Depo-Medrol. The Plaintiff was directed to return in six weeks. [Tr. 263].

The Plaintiff was seen by Dr. Sudderth, a neurologist, between December 2005 and January 2006. Dr. Sudderth reported that the Plaintiff described her auto accident and that she complained of intense pain in her neck. The Plaintiff feels that her right arm is somewhat weak and numb, she complains of severe pain in the low back area with radiation to the posterior buttocks, thigh and into the calves. The Plaintiff complained of difficulty walking because of the leg pain. Dr. Sudderth advised the Plaintiff to have an electrophysiologic examination and did not feel the Plaintiff was capable of returning to work "[i]n any capacity for the moment." [Tr. 159-162].

The Plaintiff underwent an MRI of the lumbar and cervical spine on December 9, 2005. IMPRESSION: "[There (sic) is an abnormal study due to: 1. There is disc space narrowing, loss of signal intensity and posterior disc bulge without canal or foraminal encroachment. 2. At L5-S1 there is a left posterior synovial cyst. Clinical correlation is advised".

11

On January 25, 2006 (after the Plaintiff's last insured date of December 31, 2005), Dr. Sudderth, M.D. advised that the Plaintiff have a neurosurgical evaluation. He believed that the Plaintiff would be a good fusion candidate. He prescribed Skelaxin 400 mg. T.i.d. as a muscle relaxant. [Tr. 168]

The ALJ determined that Dr. Sudderth's opinion that the Plaintiff would be unable to return to work in any capacity is an issue reserved for the Commissioner, i.e., whether Plaintiff was disabled, and thus it was not entitled to any relevant weight. Further, that Dr. Sudderth's opinion is not supported by the medical findings and is inconsistent with the record as a whole and that Dr. Sudderth's opinion was rendered after her accident.

The ALJ determined that the Plaintiff could not perform her past relevant work at step four of the sequential evaluation process, the ALJ had to decide at the fifth step whether the Plaintiff could perform other work. [Tr. 19]. For the period beginning May 19, 2007, the ALJ found that the Plaintiff was disabled based on the Medical-Vocational Guidelines (the Grids) [Tr. 21]. The ALJ reasoned that because the Plaintiff was within six months of turning fifty (50) years of age on May 19, 2007, she could be placed in the "closely approaching advanced age" category as of that date. [Tr. 19-20]. Thus, based on the fact that the Plaintiff was an individual "closely approaching advanced age", combined with her RFC for a significant range of sedentary work and other vocational factors, the ALJ utilized Rule 201.14 of the Grids to find the Plaintiff disabled as of May 19, 2007. [Tr. 21}.

For the period prior to May 19, 2007, however, the ALJ found that the Plaintiff was not disabled based on the framework of the Grids and the testimony of the vocational expert (VE) [Tr. 20-21], 465-67]. The ALJ asked the VE to assume that an individual with the

12

Plaintiff's age, education and limitations that corresponded to the Plaintiff's RFC could perform any work. The VE initially said no, but then agreed that the individual could perform the job of a surveillance system monitor. [Tr. 466-67].

**B.    Specific Issues:**

**(1)    THE COMMISSIONER'S REASONS FOR DISCREDITING DR. IJEWERE'S EXAMINING CONSULTATIVE OPINION ARE NOT CONSISTENT WITH THE EVIDENCE AND REQUIRE REVERSAL**

The ALJ credited Dr. Ijewere's opinion as to the Plaintiff's upper extremity limitations but discredited his opinion regarding the Plaintiff's inability to perform seated tasks for more than a few hours (which removed her from doing sedentary work). The medical records in this case supported Dr. Ijewere's opinion.

The state disability agency retained Dr. Ijewere for evaluating the Plaintiff's claim for disability. Dr. Ijewere reported that the Plaintiff was anxious, had shoulder tenderness and bilateral wrist tenderness with Tinel's sign. He reported that the Plaintiff had "[s]ignificant difficulty getting in and out of an armless chair and off and on an exam table", that she had cervical, thoracic, lumbar and paraspinal tenderness. He found the Plaintiff unable to lay in a supine position and had an antalgic gait. He found the Plaintiff had a motor deficit in her right and left upper extremity. Dr. Ijewere found the Plaintiff to have joint pain (from lupus) and significant range of motion limitations and limited use of her upper extremities. He found the Plaintiff had carpal tunnel syndrome and needed pulmonary assistance which added to her poor activity tolerance. [Tr. 295]

Dr. Ijewere's opinion is one of the most detailed consultative examination reports prepared by a consultative physician retained by the state agency. His assessment is clear, descriptive and based on objective testing. The ALJ did not provide sufficient substantial evidence to discredit Dr. Ijewere's opinion.

The Plaintiff was seen by Dr. Sudderth (the neurologist) after she was injured in the auto accident which worsened her condition. [Tr. 223-232]. On December 5, 2005, the Plaintiff had difficulty walking and getting up from a seated position. He determined the Plaintiff not to be capable of returning to work in any capacity. Dr. Sudderth's opinion was consistent with Dr. Ijewere's opinion.

As stated above, the MRI revealed disc space narrowing, a posterior disc bulge and a left posterior synovial cyst. On December 14, 2005, she reported the intense pain in her lower back. She reported numbness in both feet. Her exam continued to show spasm, tenderness and trigger points. On January 25, 2006, the Plaintiff was being referred for a neuro-surgical evaluation for possible fusion. [Tr. 168]. Although past her insured date, the Plaintiff received treatment from Dr. Frank Casdia from January 9, 2006 through January 2007 for the injuries received in her auto accident. [Tr. 178-203, 248-251]. Dr. Casdia's assessment was also consistent with Dr. Ijewere in that he found the Plaintiff could not sit, stand, or walk for more than three cumulative hours.

Again, past her insured date, August of 2006, the Plaintiff treated with Dr. Dusseau, a neurosurgeon. The Plaintiff was referred for pain management with no improvement in her symptoms. Dr. Dusseau was never asked to opine the Plaintiff's limitations, but the record shows the severity of the Plaintiff's condition. [Tr. 233-235].

The above medical providers did not issue any inconsistent opinions with Dr. Ijewere's opinion. Dr. Ijewere's assessment is based on the objective findings of his examination. His report was thorough and consistent with his finding and opinions of other medical providers. There was no basis for the ALJ discrediting his opinion and again he was reporting for the Social Security Administration.

When evaluating any medical source opinion - treating or non treating, the ALJ is required to consider the factors listed in the regulations. Social Security Ruling 96-5p (1996) reaffirms the need for adjudicators to apply the applicable factors in 20 C.F.R. §§ 404.1527(d) and 416.927(d). These factors are the length of treatment, frequency of examination, nature and extent of the treatment relationship, support of opinion afforded by medical evidence, consistency of opinion with the record as a whole, and specialization of the treating physician. Social Security Ruling 96-8p (1996) requires the ALJ to explain his basis for rejecting any medical opinions conflicting with his RFC assessment. Eleventh Circuit case law also provides that the ALJ is required to "state with particularity the weight he gave different medical opinions and the reasons therefor." *Sharfarz v. Bowen* 825 F.2d 278, 279 (11th Cir. 1987); *Caulder v. Bowen*, 791 F.2d 872, 880 (11th Cir. 1986) (requiring the ALJ to articulate his reasons for "giving no weight to the diagnoses accompanying the test results").

The Eleventh Circuit has refused to affirm an ALJ's decision simply because some rationale might have supported the ALJ's conclusion. *Owens v. Heckler*, 748 F2d 1511, 1516 (11th Cir. 1984). In *Owens*, the Eleventh Circuit noted that such an approach would not

15

advance the ends of reasoned decision making. Similarly, in *McDaniel v. Bowen*, 800 F.2d 1026, 1032 (11th Cir. 1986), the Eleventh Circuit rejected the Commissioner's request for the court to make findings of fact not made by the ALJ in his decision.

Even though Dr. Ijewere is not the treating physician, the ALJ was still required to resolve the inconsistencies in the evidence and explain his basis for not crediting Dr. Ijewere's opinion. The ALJ determined that the Plaintiff could sit for six hours out of an eight hour day, discrediting Dr. Ijewere's opinion that the Plaintiff cannot perform seated tasks for more than a few hours and giving no credit to his opinion that the Plaintiff has poor activity tolerance and daily functioning. [Tr. 295]. Also, Dr. Ijewere found the Plaintiff's pain to be credible, along with the other physicians. The ALJ's decision is not supported by substantial evidence.

**(2) THE COMMISSIONER ERRED IN RELYING ON VOCATIONAL EXPERT TESTIMONY THAT CONFLICTS WITH THE DICTIONARY OF OCCUPATIONAL TITLES.**

The ALJ erred in relying on the vocational expert's ("VE") testimony that conflicted with the Dictionary of Occupational Titles because the only occupation listed require more then the ability to perform one to two steps tasks.

Once an ALJ determines that the claimant cannot perform her past relevant work, the Commissioner bears the burden of proving that the claimant is capable of performing work that exists in significant numbers in the national economy. *Allen v. Sullivan*, 880 F.2d 1200, 1201 (11th Cir. 1989). The Commissioner of Social Security must develop "a full and fair

record regarding the vocational opportunities available to a claimant." *Allen, supra*, 880 F.2d at 1201 (citation omitted). The Commissioner must articulate specific jobs that the claimant can perform given her age, education and work history, if any, "and this finding must be supported by substantial evidence, not mere intuition or conjecture."

The Commissioner meets this burden by reliance on the medical-vocational guidelines. The Commissioner may not rely exclusively on the Grids when the claimant has a nonexertional impairment that significantly limits her basic work skills or she is unable to perform the full range of work. In such cases, the Commissioner may use the Grids as a framework to evaluate vocational factors but also must introduce independent evidence, preferably through a vocational expert's testimony, of the existence of jobs in the national economy that the claimant can perform. *Welch v. Bowen*, 854 F.2d 436, 439-40 (11thCir. 1988) (per curiam). The Eleventh Circuit has also held that it is only when the claimant can do unlimited types of work, that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy.

In the instant case, the ALJ improperly relied on VE testimony as to the availability of the surveillance monitor occupation. The occupation is assigned a reasoning level of three according to the Dictionary of Occupational Titles ("D.O.T"). As part of the hypothetical question, the ALJ asked the VE only to include occupations that would involve one to two step processes. The occupation of a surveillance system operator has a reasoning level of three indicating that it requires the ability to understand and carry out instructions that are more complex. A reasoning level of two, or higher, assumes that the applicant is capable of more than simple or repetitive tasks.

17

In this case, the ALJ's own restrictions precluded the ability of the Plaintiff to perform the occupation of surveillance system monitor because the occupation not only does not have a reasoning level of one but it actually has a reasoning level of three.

**(3) THE COMMISSIONER ERRED IN FAILING TO CREDIT THE OPINION OF DR. SUDDERTH, THE PLAINTIFF'S TREATING NEUROLOGIST, THAT THE PLAINTIFF IS UNABLE TO WORK**

Dr. Sudderth was the Plaintiff's treating neurologist between December 2005 through January 2006. At the time of his report in December 2005, Dr. Sudderth opined that the Plaintiff would not be able to return to work in any capacity. [Tr. 162]. The ALJ is correct that the Plaintiff had recently been injured in a car accident, but the ALJ incorrectly assumed that Dr. Sudderth modified his opinion. There is no documentation that Dr. Sudderth changed his opinion. On January 25, 2006, Dr. Sudderth wrote that his patient should be evaluated by a neurosurgeon and that she might be a "fusion" candidate. [Tr. 168]. The doctor indicated that the Plaintiff had multiple trigger points and also had an L5-S1 region that was "quite tender". Additionally, Dr. Sudderth had already ordered MRI's of the Plaintiff's lumbar spine and cervical spine. [Tr. 168-170]. The MRI of the lumbar spine did show a disc space narrowing with loss of signal intensity and a posterior disc bulge without canal or foraminal encroachment. Additionally at L5-S1 there was a left posterior synovial cyst.

Based on the content of Dr. Sudderth's progress notes [dated after the opinion that his patient could not work], the ALJ had no basis for rejecting the doctor's opinion because it was rendered after her accident. The regulations require that the findings of the treating physician as to the severity of an impairment be accorded controlling weight if they are well-supported by medically accepted clinical and laboratory diagnostic techniques and are not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2). Eleventh Circuit case law also clearly requires that the opinion of a treating physician be given "substantial or considerable weight unless 'good cause' is shown to the contrary." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-1241 (11th Cir. 2004).

The ALJ also improperly discredited the opinion of Dr. Casdia whose opinion was consistent with those of the other treating and examining providers who believed the Plaintiff was more limited than determined by the ALJ. [Tr. 18]. Although the ALJ correctly identified Dr. Casdia as a chiropractor and therefore, not an "acceptable medical source," the ALJ erred in discrediting his opinion which is supported by his medical records and also consistent with Dr. Sudderth's opinion.

**C.  CONCLUSION**

The Clerk shall enter a judgment pursuant to sentence four of 42 U.S.C. § 405(g) **reversing** the decision of the Commissioner and **remanding** to allow the Administrative Law Judge to:

1.  Properly evaluate the effect of the Plaintiff's physical and mental limitations singly and in combination regarding Plaintiff's ability to perform work in the national

economy.

2. Hold a supplemental hearing with and elicit testimony from a vocational expert to properly consider the limitations, if any, of plaintiff performing work on a regular and sustained basis.

**DONE and ORDERED** in Chambers at Ft. Myers, Florida, this 27th day of March, 2009.

_____
DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies:
All Parties of Record
All Counsel of Record